# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JANET E. ALLEN,

     **Plaintiff,**

     v.

JANET NAPOLITANO, in her official
capacity as the Secretary of the U.S.
Department of Homeland Security,

     **Defendant.**

Civil Action No. 09-02228 (JDB)

## MEMORANDUM OPINION

Plaintiff Janet E. Allen brings this action against Janet Napolitano, in her official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Plaintiff alleges that DHS management retaliated against her and created a hostile work environment in response to her filing discrimination and retaliation complaints with the Office of Equal Employment Opportunity ("EEO"). Presently before the Court is defendant's motion to dismiss, or alternatively, for summary judgment. Upon careful consideration of the motion, the parties' memoranda, the applicable law, and the entire record, and for the reasons set forth below, the Court will grant in part and deny in part the defendant's motion for summary judgment.

## BACKGROUND

### I.    The February 2008 Settlement Agreement

The centerpiece of this case is a February 2008 Settlement Agreement that plaintiff entered into with DHS and ICE, a division of DHS, to resolve her discrimination and retaliation

claims against ICE. Compl. ¶ 12. Plaintiff began working as a GS-510-15 Director of Financial Management at U.S. Immigration and Customs Enforcement ("ICE") on May 28, 2005. Id. ¶ 5. She oversaw the financial systems for ICE and five additional bureaus within DHS, approximately 400 employees, with a $60 million budget. Id. ¶ 5. Later, she alleged that the Chief Financial Officer and her immediate supervisor, Debra Bond, created a hostile work environment and discriminated against her on the basis of her gender, age, and disability. Id. ¶ 7. Plaintiff alleged, among other things, that Bond transferred her key responsibilities to other less qualified employees, limited or prevented her from accessing information critical to her job, and took away her supervisory responsibilities. Id. When plaintiff's position was upgraded to the Senior Executive Service ("SES") level, plaintiff alleged, Bond further discriminated against her when Bond did not consider plaintiff for the job and refused to grant her an interview for the position. Id. ¶ 8.

In March 2006, plaintiff filed an informal complaint of discrimination and requested alternative dispute resolution, which was later denied. Id. She alleged that Bond retaliated against her by detailing her to a duty station at DHS Headquarters. Id. ¶ 9. In May 2006, plaintiff filed a formal complaint alleging discrimination and retaliation. Id. ¶ 10. While her first EEO complaint was pending, plaintiff was reassigned from DHS Headquarters to ICE and began reporting to a GS-15 employee who had formerly reported to her when she was Director of Financial Management. Id. ¶ 11. She claimed that in her new position, the scope of her responsibilities was greatly reduced. Id. Plaintiff only oversaw two employees instead of 400; no longer managed an operation budget of $60 million; and reviewed the internal controls of a single entity although she previously was responsible for six entities. Id. Plaintiff also filed a

second EEO complaint.  Id. ¶ 12.  In February 2008, she agreed to enter into a Settlement

Agreement to resolve both of her EEO complaints.  Id.

     Under the Settlement Agreement, DHS and ICE agreed, among other terms, to promote

plaintiff to a GS-510-15, Step 10, Supervisory Accountant position retroactively and to pay her

the appropriate back pay, compensatory damages, and attorneys' fees and costs.  See Ross Decl.,

Exh. A at 1-2.  DHS also agreed to provide plaintiff with "outstanding ratings" for 2005, 2006,

and 2007 based on a list of accomplishments that plaintiff would provide to DHS.  Id.

## II.      The Alleged Breach of the February 2008 Settlement Agreement

On April 7, 2008, plaintiff timely notified the DHS Office of Civil Rights and Civil

Liberties ("CRCL") of her belief that ICE had breached the settlement agreement by failing to

provide her with "properly and duly executed performance ratings."  Def.'s Stmt. of Undisputed

Material Facts ("Def.'s Stmt.") ¶ 3.  Plaintiff complained that ICE had failed to comply with

DHS regulations and policies in providing her performance ratings:

> On or about March 20, 2008, Kathy Hill [then Acting Director for Office Assurance and
> Compliance] provided 3 ratings of record and stated that these documents fulfilled the
> agency's settlement provision to provide outstanding ratings.  [Plaintiff] expressed
> concern about the manner in which performance ratings were executed.  Ms. Hill stated
> that the settlement agreement did not contain specifics about how the ratings would be
> accomplished.  When [plaintiff] raised the issue of compliance with OPM requirements,
> Ms. Hill was non-responsive. . . . [Plaintiff] believe[s] that ICE has breached the
> negotiated settlement agreement by failing to provide [her] with properly and duly
> executed performance ratings within the specified time frame.

See Moore Decl., Exh. A.  Plaintiff also alleged that Kathy Hill and Lee Jones signed off on her

performance ratings even though neither supervised her during the relevant period in violation of

DHS regulations and policies.  Id.  Plaintiff requested that "ICE . . . fulfill its commitment to

provide outstanding ratings and that these ratings be executed in a manner that is consistent with

regulatory and policy requirements." Id. at 3.

On August 13, 2008, CRCL responded to plaintiff's letter, rejecting her claims that ICE had breached the Settlement Agreement. Def.'s Stmt. ¶ 4. Noting that the terms of the Settlement Agreement were "unambiguous" and contained no language regarding which procedures must be followed, CRCL found that ICE complied when it provided plaintiff with outstanding ratings for 2005, 2006, and 2007 as required in the Settlement Agreement. See Moore Decl., Exh. B. Plaintiff did not appeal CRCL's ruling. Def.'s Stmt. ¶ 4.

## III.    The Current Civil Action

On August 28, 2008, plaintiff contacted an EEO counselor, alleging retaliation, Def.'s Stmt. ¶ 5, and she filed an administrative complaint with the EEO on December 18, 2008. See Rock Decl., Exh. C. Plaintiff filed her complaint in this Court on November 24, 2009, alleging that defendant retaliated against her and created a hostile work environment in violation of Title VII. Compl. ¶ 13. According to the plaintiff, defendant "fail[ed] to perform its obligations under the settlement agreement in good faith" by failing to execute her 2005, 2006, and 2007 performance reviews in compliance with the terms of the Settlement Agreement. Id. Additionally, plaintiff alleges that defendant retaliated against her by failing to place her in the position of Acting Director, Office of Compliance and Assurance, by excluding her from meetings that have direct bearing on her work, by failing to provide her guidance with respect to her Performance Work Plans, by frustrating her attempts to gain clarification regarding work assignments, by failing to recognize or reward her significant professional contributions, by filing a negative 2008 evaluation regarding her work performance, and by refusing to engage in alternative dispute resolution with regard to her most recent administrative EEO complaint. Id.

<u>**STANDARD OF REVIEW**</u>

**I.      Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)**

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>see</u> <u>Leatherman v. Tarrant Cty. Narcotics and Coordination Unit</u>, 507 U.S. 163, 164 (1993); <u>Phillips v. Bureau of Prisons</u>, 591 F.2d 966, 968 (D.C. Cir. 1979). Therefore, the factual allegations must be presumed true, and plaintiff must be given every favorable inference that may be drawn from the allegations of fact. <u>Scheuer</u>, 416 U.S. at 236; <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, a court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. <u>Trudeau v. Federal Trade Comm'n</u>, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court – plaintiff here – bears the burden of establishing that the court has jurisdiction. <u>See</u> <u>US Ecology, Inc. v. U.S. Dep't of Interior</u>, 231 F.3d 20, 24 (D.C. Cir. 2000); <u>see also</u> <u>Grand Lodge of Fraternal Order of Police v. Ashcroft</u>, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"); <u>Pitney Bowes, Inc. v. United States Postal Serv.</u>, 27 F. Supp. 2d 15, 19 (D.D.C. 1998). "'[P]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." <u>Grand Lodge</u>, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice</u>

and Procedure § 1350 (2d ed. 1987)).  Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true.  See Jerome Stevens Pharmaceuticals, Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court is mindful that all that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief" a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S. at 555-56; see also Papasan, 478 U.S. at 286.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); Atherton v. District of Columbia Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).  A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  This amounts to a "two-pronged approach" under which a

court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 1950-51.

## II.      Summary Judgment Pursuant to Fed. R. Civ. P. 56(c)

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine dispute of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. Moreover, "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment, then, is appropriate if the non-movant fails to

offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## DISCUSSION

When, on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); see Yates v. Dist. of Columbia, 324 F.3d 724, 725 (D.C. Cir. 2003). Given that the [defendant's] motion [][was] in the alternative for summary judgment and that the parties had the opportunity to submit . . . materials in support and in opposition, it is not unfair to [the plaintiff] to treat the decision[] as [one for] summary judgment." Americable Int'l v. Dep't of Navy, 129 F.3d 1271, 1274 n.5 (D.C. Cir. 1997). Here, the Court notes that both parties have submitted documents outside of the pleadings in support of their positions, including plaintiff's sworn affidavit, and rely extensively on them in their filings. Therefore, the Court finds that the conversion of defendant's motion to dismiss to a motion for summary judgment is appropriate.

Defendant first argues that plaintiff's complaint must be dismissed, or alternatively that summary judgment must be granted, because plaintiff's claim that her performance ratings were not correctly issued constitutes a breach of contract claim against the United States, over which the Court lacks jurisdiction. Even if the Court had jurisdiction, defendant argues that this claim would fail because plaintiff has failed to exhaust her administrative remedies. Defendant argues that plaintiff's remaining retaliation claims are not individually actionable as retaliation and together are insufficient to rise to the level of severe and pervasive conduct required to support a hostile work environment claim. The Court will take each issue in turn.

## I. Plaintiff's Challenges to the 2005, 2006, and 2007 Performance Ratings

### A. Subject Matter Jurisdiction

Defendant first argues that this Court lacks subject matter jurisdiction over plaintiff's retaliation claim regarding the issuance of her 2005, 2006, and 2007 performance ratings. Def.'s Mot. to Dismiss or, Alternatively, for Summ. J. ("Def.'s Mot.") at 1-2; Def.'s Mem. in Supp. of Mot. to Dismiss or, Alternatively, for Summ. J. ("Def.'s Reply") at 2-3. Because plaintiff's claim essentially represents a breach of a contract claim against the government, defendant argues, only the Court of Federal Claims can hear the claim. Def.'s Mot at 11-12. Plaintiff responds that she has alleged sufficient facts to support a retaliation claim and hence this Court has jurisdiction over her claim. Pl.'s Opp'n to Def.'s Mot. to Dismiss or, Alternatively, for Summ. J. ("Pl.'s Opp'n") at 6-9.

Under the Tucker Act, the Court of Federal Claims has exclusive jurisdiction over contract claims against the United States seeking damages exceeding $10,000. 28 U.S.C. § 1491(a)(1). The D.C. Circuit and the Federal Circuit recognize that breaches of settlement agreements based on Title VII are "straightforward contract claims within the purview of the Tucker Act and the jurisdiction of the Court of Federal Claims." Greenhill v. Spellings, 482 F.3d 569, 574 (D.C. Cir. 2007) (citing Hansson v. Northon, 411 F.3d 231, 232 (D.C. Cir. 2005)) ("This court generally treats settlement agreements as contracts subject to the exclusive jurisdiction of the Court of Federal Claims."); Brown v. United States, 389 F.3d 1296, 1297 (D.C. Cir. 2004) (holding that a breach of settlement agreement claim should have been brought in the Court of Federal Claims). If the "primary thrust of [a] complaint is a breach of contract . . . , then the Court of [Federal] Claims would retain jurisdiction over the suit." See Rochon v.

Gonzales, 438 F.3d 1211, 1214-15 (D.C. Cir. 2006) (quoting Wood v. United States, 961 F.2d 195, 198 (Fed. Cir. 1992)); see also Awad v. United States, 301 F.3d 1367 (Fed. Cir. 2002) (noting that it is "well established that where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the . . . jurisdiction of the Court of Federal Claims."). Federal courts, however, can exercise jurisdiction over Title VII claims relating to a settlement agreement if the essence of the claims requires interpreting Title VII, not a contract. See Greenhill, 482 F.3d at 575 (noting that the Court of Federal Claims has drawn a "critical distinction between actual discrimination claims for which Title VII provides the exclusive remedy and breach-of-settlement claims that 'fall[] outside the comprehensive scheme' of Title VII") (citation omitted); Hansson, 411 F.3d at 234 (finding that "when a settlement agreement incorporates substantive provisions of federal law such that enforcement of the agreement requires the interpretation and application of federal law, that enforcement action arises under federal law and belongs in the district court").

Plaintiff has characterized her claim regarding her performance ratings as retaliation, but the allegations in her complaint demonstrate that the claim is predominantly one for breach of contract. Under the Settlement Agreement, plaintiff was to receive "outstanding" ratings for her performance in 2005, 2006, and 2007, Compl. ¶ 13, but she claims that defendant did not put in a "good faith effort . . . to carry out its obligations under the settlement agreement." Id. She repeats that defendant did not "bargain in good faith in entering the settlement agreement" and "lacked good faith in carrying out its obligations under the agreement." Id. ¶¶ 13, 14. In particular, she believes that the ratings "were not executed in conformance with prevailing statutory, regulatory, and policy guidelines." Id. ¶ 13. Failure to carry out obligations under a

settlement agreement, however, is the hallmark of a breach of contract claim, not a retaliation claim. Plaintiff complains that defendant retaliated against her by failing to comply with a term of her settlement agreement – a breach of the contract. She asks the Court to order defendant to alter the format and the content of her performance ratings – that is, to comply with a term of the contract. Id. Plaintiff's claim thus only involves "straightforward contract issues" where the resolution of her claim turns on whether defendant breached the settlement agreement. See, e.g., Schmidt v. Shah, 696 F. Supp. 2d 44, 62 (D.D.C. 2010) (dismissing claims "pertaining to agency misconduct that impinges on the validity of the settlement agreement for lack of subject matter jursidiction"); Murthy v. Schafer, 579 F. Supp. 2d 110, 114 (D.D.C. 2008) (dismissing plaintiff's claim that was "overwhelmingly, a contractual claim relating to Title VII" because it belonged in the Court of Federal Claims). Since plaintiff is alleging a breach of contract claim against the government and seeking $300,000 in compensatory damages, her claim falls within the exclusive jurisdiction of the Court of Federal Claims.[1] Accordingly, her retaliation claim regarding her performance ratings will be dismissed for lack of subject matter jurisdiction.

B.     Failure to Exhaust Administrative Remedies

Alternatively, even if plaintiff's claim were properly viewed as a Title VII retaliation claim, and not as a breach of contract claim, and hence the Court had jurisdiction over it, defendant argues that it must be dismissed because she failed to exhaust her administrative remedies. Def.'s Mot. at 13; Def.'s Reply at 3-7. Plaintiff claims that because defendant had notice of her claim and an opportunity to investigate, she has exhausted her administrative

---

[1] The Court will reserve at this time the issue of whether to transfer the breach of contract claim to the Court of Federal Claims. See 28 U.S.C. § 1631.

remedies.  Pl.'s Opp'n at 9-12.

A federal employee bringing a Title VII lawsuit is required to timely exhaust his or her administrative remedies.  See Harris v. Gonzales, 488 F.3d 442, 443 (D.C. Cir. 2007); Winston v. Clough, 712 F. Supp. 2d 1, 7 (D.D.C. 2010).  To exhaust administrative remedies, the employee is required to contact an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory" before filing a formal complaint of discrimination.  29 C.F.R. § 1614.105(a)(1); Greer v. Paulson, 505 F.3d 1306, 1316-17 (D.C. Cir. 2007).  The employee is also entitled to equitable tolling of the 45-day deadline if "[she] can make a showing that [she] was unaware of the time limit."  Harris, 488 F.3d at 445.  If an employee has not properly exhausted her administrative remedies or provided a basis for equitable tolling, then she cannot pursue a Title VII claim against the federal government.  Steele v. Schafer, 535 F.3d 689, 693 (D.C. Cir. 2008).

Although plaintiff does not challenge defendant's claim that she failed to meet with an EEO counselor within 45 days as required, she argues that she nevertheless gave defendant notice and the opportunity to investigate her claim that Kathy Hill was allegedly retaliating against her, and thus that she has exhausted her administrative remedies.  Pl.'s Opp'n at 10. Plaintiff wrote a April 7, 2008 letter to CRCL, asserting that she learned that Kathy Hill did not correctly issue "outstanding" performance ratings to plaintiff for 2005, 2006, and 2007.  Id. at 2. In the letter, plaintiff stated that Hill had not supervised her during those time periods but nonetheless signed off on her performance evaluations, in violation of the Settlement Agreement. Id. at 2.  Plaintiff further claimed that Hill had improperly attached a list of her accomplishments containing plaintiff's attorney's law office name and fax number, thus revealing that the

evaluations were generated as a result of litigation.  Id.

Plaintiff's letter to CRCL, however, is simply not enough to satisfy the Title VII exhaustion requirement.  Plaintiff was required to meet with an EEO counselor within 45 days of the alleged retaliatory act, but she has not provided the Court with any reason that she did not do so.  She also offers no argument as to why the 45-day period should be tolled.  See Greer, 505 F.3d at 316 (granting summary judgment for agency when plaintiff neither offered evidence or presented a basis for tolling the 45-day period to meet with an EEO counselor); Manuel v. Potter, 685 F. Supp. 2d 46, 59 (D.D.C. 2010) (granting summary judgment to defendant when plaintiff did not properly exhaust his administrative remedies by meeting with an EEO counselor within 45 days).  Plaintiff has not alleged that she was unaware of the exhaustion requirement.  She appeared to be familiar with the EEO filing process for raising a retaliation claim.  She previously had filed EEO complaints in 2006 and 2007 alleging discrimination and retaliation.  Compl. ¶¶ 10, 12.  Plaintiff has not argued that she was unaware either that CRCL is a completely separate and different division from the EEO office or that CRCL was the appropriate office to contact for an alleged breach of her settlement agreement but not for a retaliation claim.  Plaintiff, however, did not meet with an EEO counselor until August 28, 2008, more than four months after the alleged retaliation.  Id.  She cannot evade the notice requirement and be deemed to have exhausted her administrative remedies simply by notifying another office (CRCL) within DHS, when she knew the proper body to handle her retaliation claim was the EEO office.  Her contact with the EEO counselor was therefore untimely.

Moreover, nothing in plaintiff's letter to CRCL suggests that she had a retaliation claim; hence, the letter would not have given defendant notice and the opportunity to investigate her

retaliation claim. Plaintiff never mentions "retaliation" in her letter and does not offer any facts whatsoever to suggest that Hill was not complying with the settlement agreement in retaliation for plaintiff's prior EEO complaints. Her letter only complained of a breach of the settlement agreement.

Accordingly, dismissal of plaintiff's retaliation claim regarding the execution of her 2005, 2006, and 2007 performance ratings is warranted for the additional reason that plaintiff failed to exhaust her administrative remedies as required for claims under Title VII.

**II**.    **Plaintiff's Remaining Retaliation Claims**

Defendant argues that most of plaintiff's remaining alleged acts of retaliation were not timely raised with an EEO counselor. Def.'s Mot. at 16. Defendant also argues that the remaining claims are not materially adverse actions under Title VII. Id. Lastly, DHS asserts that plaintiff cannot raise new retaliation claims for the first time in her opposition to summary judgment filings. Def.'s Mot. at 16-20; Def.'s Reply at 1-12.

A.    Failure to Exhaust Administrative Remedies

Plaintiff did not timely exhaust her administrative remedies with respect to some of her other claims. As discussed earlier, plaintiff must have contacted an EEO counselor within 45 days of the alleged retaliatory act. She contacted an EEO counselor on August 28, 2008. Hence, any retaliation claims based on acts that occurred prior to July 14, 2008 – 45 days prior to August 28, 2008 – are time-barred. Plaintiff's claims that she was not selected for the Acting Director position for the Office of Compliance and Assurance, that she received no feedback on her Performance Work Plan ("PWP), that she was not recognized for an award for "Superior Mission Achievement" or for "Exemplary Performance," and that Hill did not respond to her

expressed interest in the ICE Fellows program in June 2008, must therefore be dismissed.  See

Rock Decl., Exh. C.  As of March 2008, plaintiff knew that Kathy Hill had been hired for the

Acting Director position, Compl. ¶ 13; by May 2008, she had received several versions of her

PWP and requested feedback, see Rock Decl,. Exh. C ¶¶ 2, 3, 6, 7, 8; and the awards she claims

she should have received or been nominated for were given in April 2008, id. ¶¶ 4, 5.  Plaintiff

did not timely exhaust her administrative remedies with respect to all alleged retaliatory acts that

occurred prior to July 14, 2008, and they are barred.

      B.      <u>Materially Adverse Action</u>

Title VII's "anti-retaliation provision protects an individual not from all retaliation, but

from retaliation that produces an injury or harm."  Burlington N. & Santa Fe Ry. Co. v. White,

548 U.S. 53, 67 (2006).  To establish a prima facie case of retaliation, a plaintiff must show that

(1) she engaged in a statutorily protected activity, (2) a reasonable employee would have found

the challenged action materially adverse, and (3) there existed a causal connection between the

protected activity and the materially adverse action.  Burlington, 548 U.S. at 67-69; Jones v.

Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009).  In the retaliation context, a "materially adverse"

action is one that would have "dissuaded a reasonable worker from making or supporting a

charge of discrimination," Burlington, 548 U.S. at 53, and "affect[ed] the terms, conditions, or

privileges of employment or future employment opportunities such that a reasonable trier of fact

could find objectively tangible harm,"  Holcomb v. Powell, 433 F.3d 889, 902 (D.C. Cir. 2006)

(citation omitted).  A materially adverse action in the retaliation context encompasses a "broader

sweep of action than in a pure discrimination claim," Baloch v. Kempthorne, 550 F.3d 1191,

1198 n.4 (D.C. Cir. 2008), but retaliation claims are "[still] limited to those where an employer

causes 'material adversity,' not 'trivial harms,'" Wiley v. Glassman, 511 F.3d 151, 161 (D.C. Cir. 2007) (quoting Burlington, 548 U.S. at 68).

The first element is not in dispute because plaintiff engaged in statutorily protected activity when she filed EEO complaints in 2006 and 2007 and entered into the February 2008 Settlement Agreement.  Defendant challenges the second element on the ground that plaintiff's retaliation claims do not constitute materially adverse actions.  See Def.'s Mot. at 17-20; Def.'s Reply at 7-11.  The Court takes each alleged retaliation claim in turn.

1.    Exclusion from Meetings

Plaintiff argues that defendant retaliated against her by excluding her from several meetings that were relevant to her duties and that were essential to her job.  Pl.'s Opp'n at 14, 17; Sworn Declaration of Janet E. Allen ("Pl.'s Decl.") ¶¶ 19-23, 24.  She primarily argues that, as Director of Internal Controls, she should have been invited to at least fourteen meetings, that her knowledge would have benefitted others, and that she does not know why she was excluded. See Pl.'s Opp'n at 17; Pl.'s Decl. ¶¶ 19-23, 24.  She also contends that she could not perform her duties as efficiently and effectively because she could not participate in the meetings, adding that her work performance would have been "enhanced" if she had attended the meetings.  Id. ¶ 21. Instead, she says she has been humiliated and embarrassed.  Id.

Beyond feeling humiliated and embarrassed, plaintiff claims that she was deprived of information critical to her duties and thus that her exclusion interfered with her job performance. She has identified and described in detail the alleged purpose of each meeting where she believed her exclusion was retaliatory, and in some cases, the attendees of the meetings as well. See Pl.'s Decl. ¶¶ 19-23, 24; Thomas v. Vilsack, 718 F. Supp. 2d 106, 124 (D.D.C. 2010)

(denying summary judgment on plaintiff's retaliation claim that she was excluded from important communications when she provided evidence that she should have been included); Hayslett v. Perry, 332 F. Supp. 2d 93, 104 (D.D.C. 2004) (dismissing plaintiff's retaliation claim that she was excluded from job-related meetings when she neither identified specific meetings nor demonstrated how the exclusion caused her any harm). Although plaintiff should have articulated the tangible harm or injury that she suffered with greater specificity, a reasonable juror could find that her exclusion from these meetings affected the terms and conditions of her employment so as to be materially adverse and to have dissuaded a reasonable worker from making or supporting a charge of discrimination. Defendant's motion on this point will be denied.

### 2.     Lack of Clarification on Work Assignments

Plaintiff alleges that defendant retaliated against her by not providing her sufficient clarification on work assignments. Compl. ¶ 13. Plaintiff claims that she often did not receive a timely response from Hill, which she needed to meet her deadlines. Pl.'s Decl. ¶ 2. She also cites several other times when DHS management allegedly failed to clarify their expectations for her work assignments or failed to respond to her requests altogether. Id. ¶¶ 4, 6, 7; see Rock Decl., Exh. C ¶¶ 11, 12, 13, 16, 17, 19. As a result, she claims she has been "severely stressed by this non-communication" and that she felt "harrassed," "disenfranchised," and "victimized" by the agency. Id.

But plaintiff otherwise has not identified any "objectively tangible harm" or shown that the  "terms, conditions, or privileges of [her] employment" were affected as a result of the lack of clarification or feedback. "Not everything that makes an employee unhappy is an actionable

adverse action. Minor and even trivial employment actions that an irritable chip-on-the-shoulder employee did not like would otherwise form the basis of a discrimination suit." Broderick v. Donaldson, 437 F.3d 1226, 1233 (D.C. Cir. 2006) (citing Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001)). "Mere idiosyncracies of personal preference are not sufficient to state an injury." Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999). Here, plaintiff's complaints that her supervisors did not always respond to her requests in a timely manner may be frustrating, but without allegations of tangible harm, they are not materially adverse actions that can form the basis of a retaliation claim. See, e.g., Freedman v. MCI Telecomm. Corp., 255 F.3d 840, 848 (D.C. Cir. 2001) (ruling that receiving inadequate guidance or feedback regarding plaintiff's job performance fails to rise to the level of an adverse employment action).

### 3. Lack of Recognition for the Invoice Consolidation Project

Plaintiff alleges that defendant retaliated against her when she was not recognized and rewarded for her work on the Invoice Consolidation Project. Compl. ¶ 13; Rock Decl., Exh. C ¶ 5. She contends that on August 26, 2008, other staff members "whose contributions were less significant" received recognition and cash awards from the Assistant Secretary of ICE for their efforts on the project. Pl.'s Opp'n at 16; Pl.'s Decl. ¶ 14-15. She argues that she should have received similar recognition and a monetary award at least equal to the highest award received by those staff members who were recognized, and that DHS management retaliated against her by not recognizing her work. Id.

The failure to be nominated for and to receive an award alone is not enough to be considered materially adverse. See Douglas v. Preston, 559 F.3d 549, 555 n.3 (D.C. Cir. 2009) (finding that failing to recommend a worker for a Presidential Rank Award is not categorically

an adverse action because of its "inherent speculativeness").  Rather, plaintiff must show how

the decision not to nominate her or give her the award materially affected the terms, conditions,

or privileges of her employment, thereby causing "objectively tangible harm." Id.  Courts have

found such harm when the plaintiff can demonstrate a connection between the failure to receive

an award and the loss of a financial bonus. See Weber v. Battista, 494 F.3d 179, 184-85 (D.C.

Cir. 2007) (plaintiff alleged having receiving bonuses after several positive evaluations but not

after mediocre evaluation); Russell, 257 F.3d at 818-19 (bonus directly tied to plaintiff's

performance and a higher rating would have automatically meant a larger bonus).  Here, plaintiff

has not alleged any facts showing that her receipt of recognition or an award for the project was

anything other than "entirely uncertain."  Douglas, 559 F.3d at 555 n.3.  Plaintiff was not

nominated for her work on the Invoice Consolidation Project, and even if she had been, she does

not claim that she would likely or automatically have received a monetary award as a result.

See, e.g., Benjamin v. Duncan, 694 F. Supp. 2d 1, 21 (D.D.C. 2010) (dismissing plaintiff's

retaliation claim that she did not receive an incentive award as a result of a "highly successful"

performance rating as "too speculative").  Recognition for work on a discrete project is even less

certain than receipt of an award through a standard performance-based awards program.

Because plaintiff's claim is inherently speculative, it is not materially adverse.[2]

---

[2] Even if this alleged act is materially adverse, plaintiff fails to show a causal connection between her
protected EEO activity and her failure to receive recognition for the Invoice Consolidation Project.  Plaintiff has not
offered any direct evidence of a causal connection or demonstrated that temporal proximity can support an inference
of causation.  A causal connection may be established by showing that "the employer had knowledge of the
employee's protected activity, and that . . . the adverse personnel action took place shortly after that activity."
Holcomb v. Powell, 433 F.3d 889, 903 (D.C. Cir. 2006); see also Woodruff v. Peters, 482 F.3d 521, 529 (D.C. Cir.
2007) ("Temporal proximity can indeed support an inference of causation, but only where the two events are 'very
close' in time.") (quoting Clark County School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001)).
    In the D.C. Circuit, courts have held that alleged retaliatory acts  must occur within three or four months of
the protected activity to establish causation by temporal proximity.  See, e.g., Farris v. Clinton, 602 F. Supp. 2d 74,
92 (D.D.C. 2009) (finding that acts must occur within three or four months of the protected activity and six months

4. <u>Negative 2008 Performance Evaluation</u>

Plaintiff's allegation that she received a negative[3] 2008 performance evaluation in retaliation for her prior EEO activity makes out a materially adverse action in this context. Generally, poor performance evaluations alone are not considered "materially adverse" if they do not affect a "position, grade level, salary or promotional opportunities." <u>Taylor v. Solis</u>, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (quoting <u>Baloch</u>, 550 F.3d at 1199); <u>see also</u> <u>Taylor v. Small</u>, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (finding that "loss of bonus money because of an improperly low performance rating may constitute an adverse employment action").

Here, plaintiff alleges that Kathy Hill, who allegedly knew of her prior EEO activity and settlement agreement by March 2008, retaliated against her by completing a negative performance evaluation several months later. Pl.'s Opp'n at 1. She further alleges that the negative 2008 evaluation rendered her ineligible for a performance award or a bonus and "destroyed any chance she had for promotions," including at least six promotional opportunities. <u>Id.</u> The D.C. Circuit has repeatedly recognized that receiving a poor performance evaluation that increases the likelihood of denial of a bonus or promotion could dissuade a reasonable worker

---

was too long); <u>Glenn v. Bair</u>, 643 F. Supp. 2d 23, 42 (D.D.C. 2009) (finding that time between protected activity and alleged retaliation cannot exceed three months and that six months was too long); <u>Willingham v. Gonzales,</u> 391 F. Supp. 2d 52, 61-62 (D.D.C. 2005) (finding a "three-month rule" to establish causation and that six months was too long). Here, plaintiff learned that she had not been recognized for the Invoice Consolidation Project on August 26, 2008. <u>See</u> Rock Decl., Exh. C, ¶ 5. Even if plaintiff's retaliation claim is based on the February 2008 Settlement Agreement rather than her May 2006 and October 2007 EEO filings, the alleged retaliation occurred more than six months after her protected EEO activity, which is simply too long to permit an inference of causation from temporal proximity. Thus, plaintiff also has failed to establish the necessary causal connection to support this retaliation claim.

[3] Defendant challenges whether plaintiff's evaluation can truly be considered "negative," but there are several statements in the evaluation that a reasonable jury could construe as negative, <u>e.g.</u>, the statement that "[plaintiff's] failure to direct her team to achieve both of these critical goals represented a failure of leadership." <u>See</u> Hill Decl., Exh. A.

from pursuing charges of discrimination.  <u>Douglas</u>, 559 F.3d at 552-53 (ruling that if a performance evaluation determines a discretionary bonus, then the employee can show "objectively tangible harm"); <u>Porter v. Shah</u>, 606 F.3d 809, 818 (D.C. Cir. 2010) (ruling that negative assessment of plaintiff together with his placement on Performance Improvement Plan could have affected his "position, grade level, salary, or promotion opportunities" and was materially adverse); <u>Steele</u>, 535 F.3d at 696 (ruling that the issuance of the lowest performing rating and the lowest performance bonus can be retaliatory); <u>Weber</u>, 494 F.3d at 184-85 (finding that a lower performance evaluation that could have caused plaintiff not to receive a performance award was a materially adverse action); <u>Russell</u>, 257 F.3d at 819 (finding that a smaller cash bonus as a result of a poor performance rating is a cognizable employment action under Title VII).  Plaintiff has alleged that her negative 2008 evaluation led to the loss of a performance bonus and promotional opportunities.  Defendant has not offered non-retaliatory explanations for plaintiff's performance review or denied that she did not receive a performance bonus or promotions as a result.  <u>See</u> <u>Burke v. Gould</u>, 286 F.3d 513, 522 (D.C. Cir. 2002) (finding that district court erred in granting summary judgment against plaintiff who had sufficiently alleged that his performance evaluation led to the loss of a "tangible, quantifiable award").  Based on the current record, a reasonable jury could conclude that plaintiff's negative performance evaluation constituted a materially adverse action taken in retaliation for her protected conduct.

5.    <u>Refusal to Engage in Alternative Dispute Resolution</u>

Plaintiff also argues that defendant retaliated against her in refusing to engage in ADR with regard to her most recent administrative EEO complaint.  Compl. ¶ 13.  Plaintiff did not respond in her opposition to defendant's argument that DHS's refusal to engage in ADR cannot

be the basis of a retaliation claim, and thus the Court treats this argument as conceded.  Lewis v. Dist. of Columbia, 653 F. Supp. 2d 64, 68 (D.D.C. 2009) (holding that when "a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments as conceded"); Buggs v. Powell, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (same).  The Court will therefore dismiss this claim.

C.    Remaining Retaliation Claims Not in Complaint

In her opposition brief, plaintiff alleges three additional types of retaliatory actions by defendant after July 18, 2008: imposition of unreasonable work deadlines, failure to approve training opportunities, and interference with her supervisory responsibilities.  Pl.'s Opp'n at 13-18.  Defendant contends that plaintiff cannot raise new retaliation claims for the first time in her opposition brief.  Def.'s Mot. at 16-20; Def.'s Reply at 11-12.  The point is well-taken, but the Court is hesitant to dismiss plaintiff's claims on this basis alone.  Plaintiff appears to have raised most of these claims before the EEO.  See Rock Decl., Exh. C.  The Court need not reach this issue, however, because plaintiff's additional retaliation claims are either untimely or not materially adverse.

1.    Unreasonable Work Deadlines

Plaintiff argues that she received unreasonable deadlines for completing time-sensitive assignments and was deprived of the resources and support required to complete these tasks.[4] Pl.'s Opp'n at 13-15; Pl.'s Decl. ¶¶ 4, 6.  She alleges that on July 13, 2008 and on July 18, 2008 she informed Hill that she could not complete her assignment on time.  See Pl.'s Decl. ¶¶ 4, 6. "Changes in assignments or work-related duties do not ordinarily constitute adverse employment

_____

[4] Plaintiff also claims that on April 8, 2008 she was denied additional resources she needed for completing an assignment, Pl.'s Decl. ¶ 2, but that claim is time-barred.

decisions if unaccompanied by a decrease in salary or work hour changes." Moore v. Ashcroft, 401 F. Supp. 2d 1, 27 (D.D.C. 2005) (ruling that alleged unreasonable deadlines did not constitute adverse employment action when plaintiff did not allege that the deadlines given or the substance of the assignments were based on unlawful criteria). On the other hand, frequently tightening deadlines and greatly increasing an employee's workload can be considered materially adverse action. Mogenhan v. Napolitano, 613 F.3d 1162, 1166-67 (D.C. Cir. 2010) (finding that increasing an employee's workload by five or six times and burying him in work could be considered retaliatory). Here, plaintiff has not alleged that meeting her deadlines was often impossible, that her workload increased dramatically or that she was buried in work. Instead, she only has alleged that there were a few instances when she received same-day requests and could have benefitted from additional resources and support. That claim is not sufficient to qualify as a materially adverse action. See Brodetski v. Duffey, 141 F. Supp. 2d 35, 45 (D.D.C. 2001) (finding that receiving heavier workload on a temporary and infrequent basis is not materially adverse and that employees should expect to shoulder an "extra load" on occasion).

        2.      Training Opportunities

       Plaintiff also asserts that defendant's refusal to authorize training classes and further her professional development amounts to a materially adverse action. See Rock Decl., Exh. C ¶ 20; Pl.'s Decl. ¶¶ 9, 12, 13. She first alleges that her supervisors failed to fill out the supervisory evaluation portion of her application to attend the Federal Executive Institute, although she later learned that it was not required for her to enroll into the program. Pl.'s Decl. ¶ 9. Plaintiff, however, also claims that she found it "very demoralizing" when she was not provided a reason

for the denial of her request to take two other training classes.  Id.  On one another occasion, she

was told that she could not audit five training classes because of "budget constraints," but

plaintiff does not believe the reason given to her.  Id. ¶ 13.

Denial of training opportunities is materially adverse only if there is a "material change

in . . . employment conditions, status, or benefits."  Dorns v. Geithner, 692 F. Supp. 2d 119, 133

(D.D.C. 2010) (finding that defendant's refusal to allow plaintiff to attend four training courses

was not an adverse action) (citing Lester v. Nastsios, 290 F. Supp. 2d 11, 29 (D.D.C. 2003));

Manuel, 685 F. Supp. 2d at 66 (finding that plaintiff's alleged non-receipt of training was not

materially adverse).  Plaintiff has not alleged any significant change in her employment or

"objectively tangible harm" as a result of not receiving these training opportunities.  Her claim

must be dismissed, then, because it does not represent materially adverse action.

3.      Supervisor's Interference with her Supervisory Responsibilites

Finally, plaintiff alleges that defendant retaliated against her when Hill unjustifiably

interfered with her ability to work with her contractors, DHS staff, and her own support staff.

Pl.'s Opp'n at 2, 13-15.  Among her other claims, plaintiff alleges that Hill instructed her not to

provide further comments to DHS on documents until Hill discussed the issues with her.  Pl.'s

Decl. ¶ 13.  Plaintiff believes that this restriction was not placed on any other individuals,

including her subordinates, and she felt humiliated in front of her subordinates and peers as a

result.  Id.  Plaintiff also alleges that Hill's "diversion of [her] staff resources" left her unable to

complete an assignment, which she found "harassing," and that Hill assigned her subordinate to

participate in an audit working group without consulting or informing her.  Id. ¶¶ 5, 28.  Hill's

actions, she argues, undermined and weakened her supervision of her employees.  Id.

The removal and reassignment of an employee's supervisory responsibilities can be considered materially adverse in some contexts.  See, e.g., Burke, 286 F.3d at 522.  But here, plaintiff has not alleged that she was relieved of her responsibilities.  Hill was plaintiff's immediate supervisor, and it was within her supervisory role to communicate with plaintiff's contacts and within her authority to manage plaintiff's staff.  Beyond labeling Hill's actions harassing and humiliating, plaintiff again has not alleged any objectively tangible harm that she suffered as a result.  She has not alleged that Hill's contact with her subordinates has materially affected the terms, conditions, benefits, or privileges of her employment.  The few times Hill allegedly interacted with plaintiff's subordinates did not significantly diminish or relieve plaintiff of her supervisory duties.  Plaintiff's allegations that her supervisor interfered with her responsibilities, then, do not allege materially adverse actions.  See, e.g, Forkkio, 306 F.3d at 1130 (finding that claims that supervisor transferred plaintiff's subordinates to other work groups, posted a job vacancy in his section, and re-interviewed candidates without consulting plaintiff did not state adverse actions); Patterson v. Johnson, 391 F. Supp. 2d 140, 144 (D.D.C. 2005) (finding that plaintiff's claim that defendant interfered with his ability to direct and manage his employees by detailing them out of plaintiff's section and rejecting his proposal for handling a disciplinary proposal was not materially adverse).

*        *        *        *        *

In sum, plaintiff only has established a prima facie case of retaliation regarding her exclusion from several meetings and her negative 2008 performance evaluation.  Plaintiff's remaining retaliation claims will be dismissed.

### III. Hostile Work Environment

Defendant also moves to dismiss plaintiff's hostile work environment claim because she has not offered evidence that she suffered any severe and pervasive conduct that interfered with the terms and conditions of her employment. Def.'s Mot. at 23. Defendant contends that plaintiff's claims amount to nothing more than "common workplace grievances." Id. at 21.

To prevail on a hostile work environment claim, a plaintiff must show that her employer subjected her to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Baloch, 550 F.3d at 1201 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)) (citation omitted). A hostile work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). A court will examine the "totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance," to determine whether the plaintiff was subject to a hostile work environment. Baloch, 550 F.3d at 1201. Title VII is not intended to create a "general civility code for the American workplace." Taylor, 571 F.3d at 1313 (citation omitted).

In this case, plaintiff's allegations are not sufficiently severe or pervasive to rise to the level necessary to support a hostile work environment claim. Her claims that she was excluded from meetings, received unreasonable deadlines, denied training opportunities, and assigned busy work assignments did not cause objectively tangible harm to the terms or conditions of her employment. See, e.g., Holmes-Martin v. Sebelius, 693 F. Supp. 2d 141, 165 (D.D.C. 2010)

(finding that plaintiff's claims that her job responsibilities were reduced, that she was publicly criticized, excluded from meetings, received unrealistic deadlines, and received unwarranted criticism in her performance evaluations are not sufficiently severe or pervasive to support a hostile work environment claim); Pearsall v. Holder, 610 F. Supp. 2d 87, 98 n.10 (D.D.C. 2009) (dismissing hostile work environment claim when plaintiff alleged the assignment of an inferior office, the denial of training, exclusion from meetings, and generally underutilization of his skills and experience).

In fact, the majority of plaintiff's complaints relate to her immediate supervisor's management style. Plaintiff does not even allege that she was subject to a negative attitude or unkind words from Kathy Hill or other DHS management. See Freedman, 255 F.3d at 848 (finding supervisor's "nasty attitude" insufficient to establish a hostile work environment); Johnson v. Bolden, 699 F. Supp. 2d 295, 301 (D.D.C. 2010) (dismissing hostile work environment claim where plaintiff admitted that supervisor's tone was only "negative," "harsh," "unkind," and "dismissive"). Plaintiff's frustration with her supervisors' general lack of feedback and guidance, denial of additional resources and support staff, and perceived interference with her job responsibilities amounts to nothing more than typical employment grievances and ordinary workplace conflict. Hussain v. Gutierrez, 593 F. Supp. 2d 1,7 (D.D.C. 2008) (dismissing hostile work environment claim when most of plaintiff's allegations concerned undesirable job responsibilities that were "continually changed and downgraded"). Her performance reviews and non-selection for a position are insufficiently severe to support a hostile work environment claim. Na'im v. Rice, 577 F. Supp. 2d 361, 377 (D.D.C. 2008) (finding that plaintiff's untimely and low performance ratings and non-selection for a position do

not constitute a hostile work environment). Beyond alleging less-than-ideal working conditions, plaintiff has not made sufficient allegations that defendant severely or pervasively altered and interfered with her employment. Holbrook v. Reno, 196 F.3d 225, 262-63 (D.C. Cir. 1999). Accordingly, her hostile work environment claim fails and defendant will be granted summary judgment on that claim.

## CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part defendant's motion to dismiss, or alternatively, for summary judgment. As a result, all but two of plaintiff's retaliation claims and her hostile work environment claim will be dismissed. Plaintiff's only surviving claims are her retaliation claims relating to her exclusion from several meetings and her negative 2008 performance evaluation. A separate order will be issued.


                                                   /s/
                                        JOHN D. BATES
                               United States District Judge

Dated: March 31, 2011